**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DALE AND KIM NEIDENBACH, | ) | |
| | ) | Cause No. 4:13-cv-1604-CAS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| AMICA MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT AMICA MUTUAL INSURANCE COMPANY'S**
**REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT**

COMES NOW Defendant, Amica Mutual Insurance Company ("Amica"), by and through undersigned counsel, and for its Reply Memorandum in Support of its Motion for Summary Judgment, states as follows:

**A.   Amica is Not Relying on Hearsay**

In order to dispose of the Neidenbachs' suggested hearsay objections expeditiously and to simplify this Court's review, Amica obtained sworn and certified affidavits from Mr. Lindemann and Mr. Twillman.   In their attached affidavits, both men attest to the substance of their previously offered recorded statements (presented through Mr. Papish's affidavit, as work records) and both men authenticate the documents they provided to Mr. Papish during his investigation concerning this claim. (Lindemann & Twillman Affidavits, Ex. Y & Z).

The Neidenbachs also assert hearsay objections regarding the fire department reports and photographs taken by the fire department. (Amica's MSJ Ex. C, D, E, F).  According to Rule 803(8) FRE, fire reports, including any referenced attachments, fall within the Hearsay Exception for Public Records and Reports and do not constitute inadmissible hearsay, as the Neidenbachs contend.  They further complain that the fire reports contain opinion testimony of

1

undisclosed opinion witnesses. (Amica's MSJ Ex. C, D). The fire reports and photographs fall within the Rule 803(8) Hearsay Exception for Public Records and Reports and the reports were offered for the factual accounts of the two fires that occurred at the dwelling.    The Fire Department Captain Clare Swann, who was present at the scene and participated in the preparation of the fire reports and photographs, was properly disclosed as a fact witness in Defendant's comprehensive Rule 26 Disclosures. (See Amica's Rule 26 Disclosures, 1.n., attached as Ex. AA, and Amica's MSJ Ex. C, D, E, F).  Thus, the Neidenbachs' objections regarding the fire reports with attached photographs are wholly without merit.

### B.   The Neidenbachs' Material Misrepresentation in their Bankruptcy Filings

Amica is entitled to judgment as a matter of law because the Neidenbachs made numerous material misrepresentations, material false statements and concealed various material facts from Amica during its investigation, adjustment, and evaluation of their claim and, therefore, the Neidenbachs breached the insurance policy.  One material misrepresentation raised by Amica concerns the extraordinary material difference between the value of the Neidenbachs' personal property items, as stated in their Bankruptcy filings, as opposed to the value set forth in their insurance proof of loss.  The Neidenbachs admit they attested to own $7,000 in personal property items in their sworn Bankruptcy filings in 2011.  (¶ 8 of Amica's MSJ Ex. A and B; Doc. No. 52, pg. 3-4).  Both Dale and Kim Neidenbach admitted they retained and consulted with legal counsel, Mr. Pontello, to assist in the preparation of their Bankruptcy filings, and that Mr. Pontello advised them to disclose every asset they had in preparing their Bankruptcy filings, explaining the couple would be required to certify the accuracy of the completed paperwork. (Doc. No. 52, ¶15).  The Neidenbachs also represented and admitted submitting a Sworn Statement in Proof of Loss following the 2012 fire, declaring under oath to Amica that they lost $262,500 worth of personal property items in the fire. (Doc. No. 52, ¶11; Amica's MSJ Ex. A

2

and B, ¶9).  The couple admitted they did not accumulate over $255,500 worth of household contents in the year between the 2011 Bankruptcy filing and the 2012 fire. (Amica's MSJ Ex. A and B, ¶15).

Plaintiffs cite a Missouri case, *Merseal v. Farm Bureau* in an attempt to support their new argument that their bankruptcy filing was somehow a mistake to try to defeat the allegation that the insureds had an intent to deceive, where in *Merseal*, the discrepancy in property values between the insurance claim and the Bankruptcy filing was $150,000 versus $600.  396 S.W. 3d 467 (Mo. App. ED. 2013).  The Neidenbachs fail to mention, however, that the *Merseal* plaintiffs filed their Bankruptcy Petition and Schedules *pro se*, without the assistance of legal counsel and evidence existed as to a legitimate mistake.  In the matter at bar, the Neidenbachs admit they were represented by counsel, Mr. Pontello, throughout their Bankruptcy case, including during the preparation of their Bankrupcty Petition and Schedules. (Doc. No. 52, ¶15). Under the circumstances, and in light of the Neidenbachs' admission that Mr. Pontello properly advised them to include all personal property items and the fact that this alleged mistake was never mentioned in Plaintiffs' pleadings, motions, Examinations Under Oath or otherwise, before responding to Amica's Motion for Summary Judgment, *Merseal* is wholly distinguishable from the matter at bar. *Id.*[1]

The Neidenbachs' situation is far more analogous to that presented by *Liberty Mutual Fire Ins. Co. v. Scott*, 486 F.3d 418 (8th Cir. App. 2007).  In *Scott*, the insured failed to present evidence that the values declared in a prior Bankruptcy petition were inaccurate or that the proof of loss amounts were mistaken or inadvertent, which left no evidence on the record accounting for the discrepancy between the $830 personal property valuation in the Bankruptcy versus the

---

[1] It is also worth mentioning that the Neidenbachs' discrepancy in stated personal property values exceeds $255,000 when comparing the values listed in their Bankruptcy filings ($7,000) versus their insurance claim ($262,500), which is vastly larger than the disparity involved in the *Merseal* matter.

$93,077.19 value of the insurance claim asserted about a year later. *Id.*   In finding that no rational jury could reconcile the discrepancy between the two above-referenced values, the *Scott* Court stated:

> Scott attempts to explain the striking difference by noting that the bankruptcy petition called for the "actual value" of her personal property while the insurance policy concerned only "replacement costs."…we give the nonmoving party the benefit of all reasonable inferences when evaluating a motion for judgment as a matter of law, however, the inference Scott seeks is not reasonable.  Furthermore, even if Scott's insurance claim was based solely on replacement cost, the vast difference in the two values is still too great to be reconciled based on the record before us… The only reasonable inference on the evidentiary record is that Scott made a material misrepresentation in submitting her personal property insurance claim of $93,077.19.

*Id.* at 418, citing *Childers v. State Farm Fire & Cas. Co.*, 799 S.W. 2d 138, 141 (Mo.App.1990).

Like *Scott*, the Neidenbachs' $262,500 insurance claim cannot be reconciled with their prior sworn declaration in their Bankruptcy filings, made just over a year before, declaring that they owned only $7,000 worth of personal property items.  The Neidenbachs have not claimed that either certified filing was mistaken.

Despite the Neidenbachs' illusion to the contrary, Mr. Pontello did not advise the Neidenbachs to understate the value of their personal property items during the Bankruptcy. (Doc. No. 51, pg. 4; Amica's MSJ Ex. J, pg. 23, lines 7-13; pg. 53, lines 8-10).  Although Mr. Pontello explained the difference between replacement cost and current value, as the *Scott* court noted, the different valuation methods could not account for the vast discrepancy between the Neidenbachs' declared values of personal property items in their Bankruptcy filings versus their Sworn Statement in Proof of Loss.  Tellingly, the Neidenbachs offer <u>no</u> citation to Mr. Pontello's deposition where he explains the huge disparity in values.  That is because no explanation exists, other than a blatant misrepresentation.

A mere suggestion that a metaphysical dispute of fact might exist will not defeat a well-supported Motion for Summary Judgment. Fed. R. Civ. P. 56(e).  Rather, Plaintiffs must come forward with specific facts that establish an issue for trial.  Here, there is no citation to the record supporting the Neidenbachs' argument and they fail to contradict the reasonable inference that they breached the policy by misrepresenting the value of their personal property claim. Their material misrepresentation prejudiced Amica by misdirecting its investigation and impairing Amica's ability to protect itself from false claims.  As there is no genuine dispute of material fact remaining, Amica is entitled to Summary Judgment as a matter of law.

**C.  The Valued Policy Statutes do not Shield the Neidenbachs as there was No Total Loss**

In order to fall within the scope of Missouri's Valued Policy Statutes, §379.140 (concerning the structure) and §379.160 (concerning personal property/contents), to recover the face value of the policy limits minus depreciation, the loss must qualify as a total loss by fire. Additionally, the rule concerning recovery for total loss of a dwelling is distinguishable from a total personal property loss, "the burden of proof as to the loss of personal property is on the insured." *West v. Shelter Mutual Ins. Co.*  864 S.W.2d 458, (Mo. App. 1993).

Significant portions of the dwelling remained standing after both fires, as demonstrated by the fire department's photographs taken after the first and second fires. (Amica's MSJ Ex. E & F).  Any additional loss that occurred afterward was instigated by the Neidenbachs, who actually retained and paid Mr. Lindemann to remove the undamaged in-ground family pool[2] and to demolish the standing portions of the property by pushing them into the basement cavity. (See attached Ex. Y & Z; Amica's MSJ Ex. V).   Had there been an actual total loss to the dwelling, there would have been no need to retain Mr. Lindemann's services to further damage the

---

[2] Although the Neidenbachs argue that the family's in-ground pool is irrelevant to their insurance claim, the family's in-ground pool qualified as part of the real property and was included within the value of the dwelling.

dwelling.  Furthermore, there could be no total loss of a dwelling that was fire-damaged the day before.

The Neidenbachs have produced no affirmative evidence countering Amica's allegations and evidence that the dwelling and personal property items did not suffer a total loss by fire.  In fact, after first denying removing any content items from the dwelling and submitting a Sworn Statement in Proof of Loss consistent with a total loss of all contents, the couple eventually admitted removing two storage units full of personal property content items from the dwelling. (Amica's MSJ Ex. K, pg. 54-55 & 62-63; Ex. L, pg. 46-48; Ex. M; Ex. N).  The Neidenbachs offered no evidence whatsoever concerning the value of the concealed personal property items after they were later discovered to exist.  Because neither fire caused a total loss to the dwelling, nor to the personal property contained therein, the Neidenbachs' claim falls outside the scope of the valued policy statute, despite their frivolous claims to the contrary. *Id*.

Furthermore, when an insurer alleges the insured participated in fraud, misrepresentation or collusion, the Valued Policy Statute permits the insurer to raise those defenses, rather than simply pay the face value of the policy. *DeWitt v. American Family Mutual Insurance Company*, 667 S.W.2d 700 (1984).  Because Amica properly raised the fraud, misrepresentation and concealment defenses in this case, this matter has been removed from the ambit of the Valued Policy Statute.

The Neidenbachs' premature destruction of the fire-damaged dwelling prevented Amica from completing its investigation of the scene and impeded its evaluation of the cause of the loss and the amount of damage that was incurred. (attached Ex. Y; Amica's MSJ Ex. V).  The Neidenbachs' removal of numerous personal property content items from the fire-damaged dwelling and covert relocation of those items to a storage facility, without Amica's knowledge, misdirected and prejudiced the company's investigation. *Id*.  The Neidenbachs initially testified

that they removed nothing from the dwelling other than their dogs, the ashes of a former pet, some blankets and dog food. (Amica's MSJ Ex. K, pg. 54-55 & 62-63; Ex. L, pg. 46-48; Ex. M; Ex. N).

Given their behavior, it is indisputable that the Neidenbachs considered the personal property items they removed from the dwelling to be salvageable, as the items were in good enough shape to prompt the couple to haul them away, fill two rented storage units with such items, and conceal the existence of the items from their insurer, claiming all personal property had been destroyed in the fire. *Id.* (attached Ex. Y; Amica's MSJ Ex. V).  The Neidenbachs are estopped from claiming that all content items were lost in the fire or were otherwise made unsalvageable (Doc. 52, ¶31), especially given that the couple eventually admitted the existence of two rented storage units where they had concealed numerous personal property items,[3] some initially depicted in the fire department's photos of the scene.  (*Id.*; Amica's MSJ Ex. E & F).[4]

The Neidenbachs argue that *Stahlberg v. Travelers Indemnity Co.,* is pertinent to their argument that the dwelling was a constructive total loss because *Stahlberg* discussed a demolition order. 568 S.W.2d 79 (Mo. Ct. App. 1978).   However, the Neidenbachs are misguided in their reliance, as *Stahlberg* involved a demolition order based on a local ordinance that prohibited reconstruction. *Id.*   No such prohibition was pertinent to the Neidenbach dwelling.  Notably, the Neidenbachs have failed to provide this Court with either the applicable ordinance or the demolition notice, demonstrating their argument's lack of merit.   Because the

---

[3] It is worth noting that the Neidenbachs only disclosed the existence of the first storage unit upon submitting their errata sheets.  Although Mrs. Neidenbach was present at the inspection of the first storage unit, she only unlocked and provided access to one storage unit and failed to mention the existence of the other unit.  The existence of the second such unit was independently discovered by Amica well over a month after inspecting the first unit.

[4] The Neidenbachs offer no case that supports their argument that an insured can actively destroy or cause further damage to a fire-damaged dwelling, thereby impeding the insurer's investigation, and secretly haul away and conceal two storage units full of content items, all while misdirecting the insurer's investigation by denying their involvement in demolishing the home and removing voluminous property items, and still expect to receive the face value limits of the insurance policy, after engaging in that conduct.   The Neidenbachs have not directed this Court to such a case because one does not exist.

Neidenbachs again rely on mere denials and suggestions, they fail to raise a genuine dispute of material fact, and Amica is entitled to Summary Judgment as a matter of law.

### D.  **The Neidenbachs Made Material Misrepresentations and Concealed Documents**

The Neidenbachs admit that Amica requested financial documentation, including bank records, income tax documentation, and receipts related to the Neidenbachs' purchases of various personal property content items, and that all requested documentation was not produced as the Neidenbachs claimed the remaining documentation had been destroyed in the fire. (See Amica's MSJ Ex. A and B, ¶31; Doc. No. 52, ¶33, ¶34).  Amica only learned of the existence of additional financial documents when Ray Papish forwarded photographs he took of the contents of the Neidenbachs' storage units.  It was the Neidenbachs' contractual obligation to produce the requested documentation and, given the volume of allegedly unsalvageable content items removed from the dwelling, no honest and reasonable person could accept the Neidenbachs' latest story, that the only documents destroyed in the fire were, conveniently, the specific ones Amica requested.  This is especially true given that Amica has produced photos depicting <u>boxes of</u> documents, tax returns, cancelled checks, bills and bank statements. (Amica's MSJ Ex. X).

The Neidenbachs make the conclusory assertion that no other pertinent documents exist within the photographed boxes of documents,[5] representing to this Court that the photos in Exhibit X only depict a single tax return and one receipt of purchase.   The Neidenbachs wholly ignore the fact that they admitted telling Amica that all other unproduced financial

---

[5]  There are numerous photographs depicting similarly-sized boxes of financial documentation found stored in the Neidenbachs' rented storage units, only a small sample of the photographs were included in Exhibit X.  It should be noted that Ray Papish was retained to take photographs to generally inventory the contents of the storage units; he was not asked to photograph each document stored in each box of financial documents.  At the time that Mr. Papish went to inspect the storage units, Amica understood that <u>all surviving financial documentation,</u>(amounting to less than 50 pages) had already been produced, as the Neidenbachs previously stated. Again, a complete and material misrepresentation made by the Plaintiffs.

documentation had been destroyed in the fire. (See Amica's MSJ Ex. A and B, ¶31; Doc. No. 52, ¶33-¶34). What other documents survived the fire and remain inside the photographed boxes?

The Neidenbachs argue that Amica never found any "missing documents."  To the contrary, Amica discovered the continued existence of boxes of financial documents.  The policy requires that the Neidenbachs produce the documentation requested by Amica; it is not Amica's duty to locate documents the insureds have chosen to conceal.  (See the Policy, pg. 13 of 23, Duties After Loss, C.7(a),(b)). The Neidenbachs' Exhibit 6 demonstrates the comprehensive nature of the document requests sent by Amica.  The Neidenbachs responded to the requests, stating that the majority of the documents sought were destroyed in the fire, producing only a handful of documents. (See Amica's MSJ Ex. A and B, ¶31; Doc. No. 52, ¶33-¶34).   Clearly the Neidenbachs failed to cooperate with Amica, despite the company's reasonable attempts to secure compliance.

The Neidenbachs' failure to produce requested documentation prejudiced Amica by impairing its ability to adjust the loss, inspect and verify ownership and value of the claimed items, investigate the couple's financial condition at the time of the fire, all limiting Amica's ability to evaluate the Neidenbachs' claims and any defenses available to the company.  Because the Neidenbachs breached the policy's cooperation clause, prejudicing Amica, and the couple failed to demonstrate the existence of any remaining dispute of material fact, Amica is entitled to judgment as a matter of law.

E.  **The Neidenbachs Concealed Personal Property Items in Storgage Units**

The Neidenbachs both claim to have misinterpreted each of Amica's repeated questions regarding whether, when and which content items were removed from the fire-damaged dwelling, when the couple sat for their separately-taken Examinations Under Oath.  During their Examinations Under Oath, both unequivocally denied removing any personal property items

9

from the dwelling after the second fire, admitting to removing only their dogs, the ashes of a former pet, a few blankets and dog food, following the first fire. (Doc. 52, ¶33-¶34). About a month later, on their errata sheets, both directly contradicted their prior testimony, belatedly disclosing the existence of a storage unit containing content items that were removed from the fire-damaged dwelling, that were clearly not totally lost in the fire. (Amica's MSJ Ex. M and N).

The Neidenbachs conveniently complain that their counsel did not have an opportunity to ask questions during their Examinations Under Oath, which somehow prevented the couple from understanding the various questions or answering truthfully. (Doc. No. 51, pg. 6). First, the Neidenbachs' attorney was present during all Examinations Under Oath and could have asked whatever he wanted; no one prevented his questioning. Second, Mr. Neidenbach met with his attorney after his wife's Examination concluded and he recessed his own Examination, while in progress, to speak with his lawyer. (See time stamps on Amica's MSJ Ex. K and L; addit'l. excerpt from Mr. Neidenbach's EUO, attached as Ex. BB, pg. 99, Lines 21-22; pg. 100, lines 1-11). This new misrepresentation by the Neidenbachs should not be tolerated as their counsel was given every opportunity to advise them during their Examinations Under Oath.

The Neidenbachs deny having any intent to deceive Amica, claiming to have each coincidentally "misconstrued" every question posed concerning their removal of content items from the dwelling. Accepting this absurd excuse would require one to believe both of them interpreted the questions asked in their separate Examinations Under Oath in the very same way, despite the use of different wording and contexts. The Neidenbachs additionally contend they immediately volunteered the correct information that they had misrepresented during their Examinations Under Oath. The term "immediate" is defined by Black's Law Dictionary as, "Present; at once; without delay; not deferred by any interval of time…the word denotes that action is or must be taken either instantly or without any considerable loss of time." Despite

10

their argument, the Neidenbachs did not correct their misrepresentations at once. Rather, Amica received the couples' errata sheets, which resulted in the disclosure of <u>one</u> storage unit, 31 days after the Examinations Under Oath concluded, which constituted Amica's first notification that the couple sought to change their prior testimony. (*See* Amica MSJ Ex. K, L, M and N). Clearly, the term "immediate" does not apply in this circumstance.

For purpose of evaluating the materiality of their misrepresentations or concealments, it is inconsequential that the Neidenbachs eventually corrected parts of their sworn testimony. *Brawner v. Allstate*, 2008 WL 2945593 (8th Cir.) Their misrepresentations misdirected Amica's investigation and caused the company to focus on the veracity of the Neidenbachs' statements and expend investigative efforts to determine what information was correct and reliable. *Id.* Amica suffered prejudice by reason of the Neidenbachs' misrepresentations and concealment concerning the personal property content items, which items were permitted to degrade and suffer additional damage in the uncontrolled climate of a storage unit, while Amica was prevented from timely inspecting the items after the fire, due to its reliance on the Neidenbachs' statements that all content items had been destroyed in the fire. Amica has the contractual right to inspect all damaged personal property items as often as the company reasonably requires and the Neidenbachs interfered with that right. (See the Policy, page. 13 of 23, Duties After Loss, C.7(a),(b)). The Neidenbachs now seek an opportunity to further explain their misrepresentations, likening their situation to a case involving an insured who seeks to explain the values she assigned to various items on her contents inventory. (Doc. No. 51, pg. 6).

The situations are not analogous. The Neidenbachs cannot credibly deny telling Amica that no personal property items were removed from the fire-damaged dwelling when, in fact, a large volume of items were removed and stored by the Neidenbachs in two storage units that were concealed from Amica. (Doc. 52, ¶33-¶34; Amica's Ex. M and N). The only explanation

offered by the couple is that both misunderstood every question asked on that point during their separate Examinations Under Oath. (Doc. No. 51, pg. 5).   The offered explanation is unreasonable, incredible and insufficient to raise a genuine dispute of material fact to avoid summary disposition of this case.  Amica is entitled to Judgment in its favor, as a matter of law.

### F.   The Neidenbachs Paid to Demolish the Dwelling and Remove the Pool

The Neidenbachs continue denying involvement in seeking the removal of the pool and in requesting that the standing portions of the dwelling be demolished. (Doc. No. 52, ¶26; Amica's MSJ Ex. A and B, ¶29; Ex. K, pg. 66-67; Ex. L, pg. 110-112).   Yet, Amica's investigation revealed that the Neidenbachs retained and paid Mr. Lindemann to accomplish both tasks. (Attached Ex. Y & Z; Amica's MSJ Ex. V).   Neither Mr. Lindemann, Mr. Twillman nor Mr. Papish have a stake in this litigation; they have no motive to be dishonest.  Additionally, the three men have produced documentation that supports their account of events. *Id*.  When weighed against the Neidenbachs' Affidavits, given the couples' motive to recover insurance proceeds and their proclivity toward misrepresentation in this matter, the Neidenbachs' mere denials do not effectively counter the consistent affidavits and supporting documentation offered by Mr. Lindemann, Mr. Twillman and Mr. Papish. *Id*.  The Neidenbachs' denials concerning their involvement in the destruction of the fire-damaged dwelling and the removal of the pool are simply additional misrepresentations made by the couple in their quest to recover the limits of the Amica policy, by any means.

The policy provides no coverage if an insured intentionally concealed or misrepresented any material fact or circumstance, engaged in fraudulent conduct or made false statements related to the insurance. (See the Policy, pg. 16 of 23, R.(1)-(3)).   The Neidenbachs' misrepresentations misdirected Amica's investigation and prejudiced its ability to fully evaluate and adjust the claim.  Amica has produced overwhelming evidence that the insureds made

material misrepresentations and concealed material information, causing prejudice to Amica, which voids the policy.  The Neidenbachs have failed to produce evidence sufficient to create a genuine dispute of material fact, entitling Amica to Summary Judgment, as a matter of law.

G. **The Neidenbachs Initially Denied being in Arrears on Mortgage Payments and Claimed Ignorance of the Lifted Bankruptcy Stay**

The Neidenbachs now deny making any misrepresentations regarding being in arrears on their mortgage payments at the time of the fire, or regarding their prior knowledge that the Bankruptcy Stay had been lifted.  However, during his Examination Under Oath, when asked if he was current on his mortgage at the time of the fire, Mr. Neidenbach said, "Basically, other than the fact that, at the time of the fire, we were looking for a modification and we had been for approximately 24 months and we were—I was affiliated with a lawyer at that time." (Ex. K, page 26, lines 20-24).  The Neidenbachs fail to designate any portion of the Examination Under Oath where that answer changes. Mr. Neidenbach testified about his attempts to secure a mortgage modification to extinguish a variable interest rate and how this prompted his Bankruptcy filing. However, Mr. Neidenbach never stated that he was behind on his mortgage at the time of the fire. *Id*.  After having denied this point for years, the Neidenbachs now appear to admit that they were at least $10,746.69 behind on their mortgage payments when the loss occurred. (Doc. No. 52, ¶20).  Similarly, after years of denying having knowledge that the Bankruptcy Court lifted the Stay applicable to the mortgagee just weeks before the fire, the Neidenbachs now admit being aware the Stay was lifted, thus, they were aware before the fire that the Court's Order Lifting the Stay permitted the mortgagee to foreclose on their dwelling. (Doc. No. 52, ¶21)[6].  All of the Neidenbachs' misrepresentations were pertinent to Amica's investigation and each

---

[6] It is worth noting that the Neidenbachs denied this same Statement of Fact when they answered Amica's Request for Admissions a year ago and denied it during their Examinations Under Oath long before that.  (Amica's Ex. A and B, ¶20; Amica's Exhibit K, pg. 114-115).  This is just another of the Neidenbachs' misrepresentations; their story has proven to be quite malleable.

misdirected the company's efforts, prejudicing Amica.  As there is no dispute of material fact remaining, Summary Judgment should be entered in Amica's favor.

**H.  <u>The Neidenbachs Violated the Policy's Cooperation Clause</u>**

The Neidenbachs argue that because Amica visited the fire-damaged dwelling within a week of the fire, the company did not suffer prejudice when the Neidenbachs instigated the demolition of the dwelling.  Amica's initial visit to the property was directed at evaluating the evidence concerning the cause and origin of the fire; that initial visit did not concern the activities pertinent to adjustment of the claim.  For example, Amica still needed to obtain measurements of the rooms in the dwelling, to identify the building materials utilized inside and inventory any recognizable fire-damaged contents.  Because the dwelling was prematurely demolished, Amica was prevented from gathering that information.  Furthermore, since there were no construction or architectural plans available concerning the Neidenbach dwelling, Amica had no alternative tool with which to recreate the missing information.   Thus, Amica clearly suffered prejudice and the Neidenbachs' argument is without merit and is contrary to the case law cited by Amica.

Additionally, the Neidenbachs' removal and concealment of personal property content items from the loss location delayed Amica's inspection of all such property for 9 months after the loss. The content items would have been immediately available and preserved for inspection following the fire, had the items not been hauled away and hidden.  The existence of the first storage unit was disclosed about one month after the March Examinations Under Oath, but the existence of the second storage unit was independently discovered by Amica well over a month

later.   By the time the second unit was made available for inspection by Amica's investigator, approximately 9 months had lapsed since the fire loss.[7]

I. **The Neidenbachs Breached the Policy by Prematurely Filing Suit**

Amica is entitled to a favorable entry of Summary Judgment, as a matter of law, in that the Neidenbachs have admitted they prematurely filed suit against Amica, at a time when Amica's investigation was ongoing, when no coverage decision had been made, when Examinations Under Oath had not concluded, and when Amica remained unaware of the concealed storage units filled with personal property items. (Doc. No. 51, pg. 9; Doc. No. 52, ¶24).  The Neidenbachs' premature filing of this litigation prevented Amica's completion of its claim investigation, adjustment and coverage evaluation and breached the policy.[8]

The policy states that no action can be brought until there has been full compliance under Section I of the policy. (Policy, pg. 15 of 23, as modified by pg. 2 of Endorsement HO 01 24 05 11).  Because Amica was not afforded an opportunity to fully investigate the claim, complete its adjustment, make a coverage determination, or otherwise possess itself of all knowledge at the time the Neidenbachs instituted litigation, Amica suffered prejudice, as a matter of law. *Wiles v. Capitol Indemnity Corp.*, 215 F. Supp.2d 1029, (US. Dist. Mo.E.D. 2001) *(See* FN 6).  Thus, given their admitted breach of the policy, there is no genuine issue of material fact remaining, the Neidenbachs are barred from recovery and Amica is entitled to a favorable entry of Summary Judgment, as a matter of law.

---

[7]  It is worth mentioning that the Neidenbachs provided statements to Amica shortly after the loss indicating that all of their personal property content items had been destroyed in the fire.  Thus, Amica had been laboring under that belief from the time of the loss, many months before the Examinations Under Oath were taken.

[8]  The Neidenbachs have inexplicably set forth case law concerning vexatious refusal in their Response Memorandum, presumably to distract this Court from considering the merits of their breach of the Policy by prematurely filing suit.  The Neidenbachs dismissed their vexatious refusal claim long ago, there was no basis for the claim, and the legal authority cited is wholly irrelevant to the pending dispositive Motion.

WHEREFORE, and for all the foregoing reasons and those stated in Defendant Amica Mutual Insurance Company's Summary Judgment Briefing, Amica respectfully requests that this Court grant its Motion for Summary Judgment, that Plaintiffs' claims be dismissed with prejudice as their filings in Opposition to Amica's Motion for Summary Judgment demonstrate that Amica is entitled to judgment as a matter of law, as no genuine issue of material fact remains.  Additionally, Amica requests any further relief the Court deems just and proper, under the circumstances.

Respectfully submitted,

/s/ Robert W. Cockerham_____
Robert W. Cockerham #31984MO
**COCKERHAM & ASSOCIATES, L.L.C.**
Attorneys for Defendant Amica Mutual Ins. Co.
10803 Olive Blvd.
St. Louis, MO 63141
314-621-3900
314-621-3903 FAX
rcockerham@cockerhamlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of December 2014, this document was filed via this Court's Electronic Filing System for electronic service upon Plaintiffs' counsel, David C. Knieriem.  Additionally, a paper working copy of this pleading has been forwarded via U.S. Mail to the Chambers of The Honorable Charles A. Shaw, 111 South Tenth Street, Suite 8-N, St. Louis, MO 63102.

/s/ Robert W. Cockerham_____