UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DALE NEIDENBACH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:13-CV-1604 CAS |
| ) | |
| AMICA MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion for summary judgment. The motion is fully briefed and ready for disposition. For the following reasons, defendant's motion for summary judgment is granted.

*I. Background*

Plaintiffs Dale and Kim Neidenbach allege in their first amended complaint that on or about October 10, 2012, a fire started on their property, and they sustained damage amounting to the total loss of their home and personal belongings. They claim that defendant Amica Mutual Insurance Company ("Amica") had issued them an insurance policy covering this damage, which was in full force and effect at the time. They also claim that they satisfied all conditions precedent under the policy. Plaintiffs contend they made a demand for coverage under the policy, which defendant failed to pay. Plaintiffs allege that they have been damaged in excess of $612,000.00, and without specifying what type of claim they are bringing, they request in their amended complaint that the Court enter judgment in their favor against defendant Amica in excess of $25,000.00.

Defendant Amica filed an answer in response to the amended complaint, in which it asserted a number of affirmative defenses and a counterclaim against plaintiffs. Defendant alleges in its

affirmative defenses, among other things, that plaintiffs are barred from recovery and there is no coverage under the policy at issue because the loss arose out of an intentional act by the insured, and that plaintiffs intentionally concealed and/or misrepresented material facts about the circumstances of the fire and the extent of the loss. Amica asserts a counterclaim for declaratory judgment. Amica requests, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the Court declare the Neidenbachs are barred from recovery and there is no coverage under the policy at issue.

In the motion presently before the Court, defendant Amica moves that the Court enter judgment in its favor as to plaintiffs' claims against the company.[1] Amica argues that the Neidenbachs are barred from recovering under the policy due to a number of material misrepresentations they made during the claims process. More specifically, Amica argues that the amount plaintiffs claimed in their proof of loss differs dramatically from the amount they valued their personal property in connection with a bankruptcy petition they filed just one year prior to the fire. Amica also argues that the Neidenbachs failed to inform Amica about the existence of financial documents and other property items that they had moved to two storage units following the fire. Amica further argues that the Neidenbachs concealed their involvement in the demolition of their home and the removal of their underground swimming pool before Amica had completed its investigation. Finally, the company argues that the Neidenbachs failed to cooperate in Amica's

---

[1]In its summary judgment motion, Amica has not referred to its counterclaim. In its prayer for relief, Amica requests "that plaintiffs' claims be dismissed with prejudice and for any further relief the Court deems just and proper, under the circumstances." Doc. 48 at 2. See also Doc. 50 at 18.

2

investigation and filed suit prematurely, before Amica had made any coverage decision. Plaintiffs oppose the motion for summary judgment, which is fully briefed.

## II. *Summary Judgment Standard*

The Eighth Circuit has recently articulated the appropriate standard for consideration of motions for summary judgment, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008) (cited case omitted).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the parties' motions for summary judgment.

## III. Facts

Dale and Kim Neidenbach were named insureds on a homeowners insurance policy issued by Amica, Policy number 630524-20HX ("the Policy"), with effective dates May 8, 2012, through May 8, 2013. On October 10, 2012, a fire occurred at the Neidenbachs' residence, located at 991 Decker Road, Labadie, Missouri 63055.[2] After the fire was extinguished, portions of the home remained standing, but there was considerable damage. The parties dispute whether the fire resulted in a total loss of the dwelling and personal property.

Following the fire loss, the Neidenbachs made a claim under the Policy. They submitted a Sworn Statement Proof of Loss ("Proof of Loss") claiming their dwelling and garage suffered a total loss, and seeking $375,000.00 in alleged damage to the dwelling and garage. They also sought $262,500.00 for fire damaged personal property items, such as household goods, furnishings, clothing, tools, firearms, and other hobby equipment. In the record submitted to the Court, there is an inventory of the Neidenbach's personal property attached to the Proof of loss.[3] Doc. 50, Ex. U at 2-36.

Approximately one year prior to the fire loss, the Neidenbachs had filed for bankruptcy in the United States District Court for the Eastern District of Missouri, Eastern Division, Case No.

---

[2]The parties dispute whether there were one or two fires at the residence. The Court recognizes this factual dispute, but for purposes of summary judgment, the Court finds this disputed fact is not material and the Court will refer to the event as a fire.

[3]The Neidenbachs do not dispute the authenticity or the existence of the inventory attached to the Proof of Loss. They do, however, point to a note in Amica's internal claims file that the Neidenbachs had not submitted a contents inventory. Doc. 52, Ex. 7 at 1. This internal note does not create a dispute of fact. There is also a letter in the record from Amica to the Neidenbachs acknowledging that the company had received the couple's inventory of personal property, which totaled $340,770.00. Doc. 50, Ex. T at 1.

11-46383-399. In signing and filing their 2011 Chapter 13 Bankruptcy Petition, the Neidenbachs attested that the value of their house was $300,000.00. They further declared under penalty of perjury that they jointly owned only $7,000.00 worth of household goods, furnishings, clothing, furs, jewelry, firearms, other hobby equipment, and other such personal property contents items. It is undisputed that the Neidenbachs did not accumulate over $255,500.00 worth of household contents in the year between the 2011 filing of the couple's bankruptcy petition and the 2012 fire loss.

During the claims process, Amica examined the plaintiffs under oath. At their examinations, Dale and Kim Neidenbach each denied removing any personal property items from the house, other than a bag containing dog food, an urn containing a late pet's ashes, a few blankets and their dogs. Both claimed that all other content items were destroyed in the fire. A month after their examinations, the Neidenbachs informed Amica of the existence of a rented storage unit where the couple had stored personal property items removed from their home following the fire. Several months after learning about the existence of the Neidenbachs' first storage unit, Amica learned that the Neidenbachs had rented a second storage unit at the same facility where they had also stored items removed from the fire. The Neidenbachs did not volunteer the existence of the second unit when Amica's investigator visited the facility to inspect the first storage unit. The Neidenbachs sought recovery from Amica for personal property that was removed from the dwelling and placed in the two storage units. It is disputed, however, as to whether these items were salvageable.

As part of its claim investigation, Amica requested certain financial information from the Neidenbachs, such as bank records and income tax documentation, as well as receipts related to the Neidenbachs' purchases of various personal property items. The Neidenbachs did not produce all the financial information Amica requested. They claimed that the financial information had been

destroyed in the fire. Upon inspecting the storage units that were rented by the Neidenbachs, Amica's investigator discovered that there were boxes of financial documents that were not destroyed in the fire. Neither party provided the Court with an inventory of these documents. It is disputed whether the stored documents were documents Amica had requested during its investigation of the fire loss but which the Neidenbachs had not produced.

Following the fire, Amica's adjuster secured an extension of the normal municipal demolition deadline to accommodate Amica's investigation. The company advised the Neidenbachs about the extension and asked that the Neidenbachs not disrupt the scene of the fire to provide the company with a reasonable opportunity to investigate the loss. Before Amica had an opportunity to complete its investigation of the scene, Amica discovered that the Neidenbach's dwelling had been demolished and pushed into the lower level, and that their swimming pool had been removed from the property. During the Neidenbachs' examinations, each denied participating in, paying for, or requesting anyone's assistance in demolishing the fire-damaged dwelling. Joe Lindemann, however, provided an affidavit in which he stated that the Neidenbachs paid him $600.00 in cash to demolish the fire-damaged dwelling by pushing the remains of the house into the dwelling's lower level. During their examinations, both of the Neidenbachs denied participating in, paying for, or otherwise requesting the removal of the couple's in-ground fiberglass pool. Mr. Lindemann also stated in his affidavit that the Neidenbachs paid him to remove and store their fiberglass pool. Amica also submitted to the Court copies of a permit Mr. Lindemann obtained from the state to transport the pool, invoices paid to a crane operator that removed the pool, and photos of the pool he removed from the ground. Mr. Lindemann stated in his affidavit that Mr. Neidenbach paid him $7,000.00 in cash to remove, transport, and store the pool, and that a $7,000.00 balance remains. Mr. Neidenbach

6

testified under oath that the pool remained at the insured property, claiming someone must have filled the pool in with dirt.

The Policy contains the following language:

SECTION I - CONDITIONS

> C. Duties After Loss
>
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an insured seeking coverage, or a representative of either:
>
> \*\*\*
>
> 4. Protect the property from further damage…
>
> 5. Cooperate with us in the investigation of a claim;
>
> 6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory.
>
> 7. As often as we reasonably require:
>
>> a. Show the damaged property;
>> b. Provide us with records and documents we request and permit us to make copies…

Doc. 2, Ex. A. at 28.

> H. Suit Against Us
>
> No action can be brought against us unless there has been full compliance with all the terms Under Section I of this policy and the action is started within 10 years after the date of loss.

Id. at 15 and 39-40.

R. Concealment Or Fraud

We provide coverage to no insureds under this policy if, whether before or after a loss, an insured has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

Relating to this insurance.

Id. at 31.

At the time the Neidenbachs filed this lawsuit, in April of 2013, no coverage determination had been made, and Amica had not completed its investigation.

## *IV. Discussion*

Amica argues in its motion for summary judgment that plaintiffs are barred from recovery under the terms of the Policy because the Neidenbachs intentionally concealed or misrepresented material facts and circumstances concerning the nature and extent of their claimed loss and damages. Amica argues, based on the provisions in the Policy, that the Neidenbachs are not entitled to recover because they concealed material facts and made numerous false statements with "relating to [the] insurance." Id.

This is a diversity case and both parties agree that Missouri law applies. The Eighth Circuit has held that under Missouri law, the interpretation of an insurance contract is "generally a question of law, particularly in reference to the question of coverage." Spirtas Co. v. Nautilus Ins. Co., 715 F.3d 667, 671 (8th Cir. 2013) (quoting D.R. Sherry Constr., Ltd. v. American Family Mut. Ins. Co., 316 S.W.3d 899, 902 (Mo. banc 2010)). As noted by the Eighth Circuit, "Missouri courts interpret

terms in an insurance contract according to their plain meaning." Id. (citing Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo. banc 1999)). "The plain or ordinary meaning is the meaning that the average layperson would understand." Shahan, 988 S.W.2d at 535. What is more, ambiguities are resolved in favor of the insured. Burns v. Smith, 303 S.W.3d 505, 509-10 (Mo. banc 2010). Some insurance policies, like the Policy at issue in this case, contain language that provides the entire policy will be void if an insured committed fraud or knowingly concealed or misrepresented any material fact or circumstances related to the insurance. Such misrepresentation clauses have been deemed valid and enforceable in Missouri. Liberty Mut. Fire Ins. Co. v. Scott, 486 F.3d 418, 422–23 (8th Cir. 2007); see also, Childers v. State Farm Fire & Cas. Co., 799 S.W.2d 138, 141 (Mo. Ct. App. 1990).

According to Missouri law, despite the reference to the term, "fraud" in most misrepresentation clauses, the insurer is not required to prove the elements of fraud to avoid coverage if the policy language also indicates, as here, that the policy is rendered void for intentional concealment or misrepresentation of a material fact. Employers Mut. Cas. Co. v. Tavernaro, 4 F. Supp. 2d 868, 870 (E.D. Mo. 1998). In order to avoid liability under a policy, the insurer is required to sufficiently establish the existence of the insured's material misrepresentation or concealment. Kearns v. Interlex Ins. Co., 231 S.W.3d 325, 331 (Mo. Ct. App. 2007); see also, Hayes v. United Fire & Cas. Co., 3 S.W.3d 853, 857 (Mo. Ct. App. 1999).

### A.     Misrepresentations in the Proof of Loss

Amica argues that it is entitled to summary judgment because plaintiff made gross misrepresentations following the fire when they submitted their Proof of Loss. In their Proof of Loss, which was notarized and signed under oath, the Neidenbachs sought reimbursement for $262,500.00 in personal property content items and $375,000.00 in alleged damage to the dwelling

and garage. It is also undisputed that when the Neidenbachs filed for bankruptcy in 2011, they swore under oath that their home had a value of $300,000.00, and that they owned only $7,0000.00 worth of household goods, furs, jewelry, firearms and other such personal property. According to Amica, the $255,500.00 discrepancy between the claimed value of the personal property and the bankruptcy petition demonstrates as a matter of law that plaintiffs intentionally misrepresented material information in the Proof of Loss.

Plaintiffs maintain that the disparity between their Proof of Loss and the value of their personal property during bankruptcy proceedings is attributable to the different methods they used to calculate such amounts. Specifically, plaintiffs both state that during the bankruptcy proceedings their attorney advised them to value their personal property items at their current resale value. In sworn affidavits, both plaintiffs state "[i]n discussing the bankruptcy filing with our attorney, it was explained to us that the values used in a bankruptcy were 'garage sale value' – in other words, what a willing buyer would pay." See Doc. 52, Exs. 1 and 2. In contrast, they argue that the amounts listed on the Proof of Loss represented the fair market value, which they interpreted to mean "what a willing buyer would pay AND what a willing seller would sell it for." Id. They also explain in their memorandum that they considered their house to be a total loss, and therefore, they asked for the policy limits, to which they contend they are entitled under Missouri law. The Court finds plaintiffs' explanations are not supported by the evidence in the record and controlling case law requires the entry of summary judgment in Amica favor.

In a case with similar facts, Liberty Mutual Fire Insurance Company v. Scott, 486 F.3d 418 (8th Cir. 2007), the insured's home was damaged by fire and she claimed $93,077.19 in personal property damages. Id. at 420. In the year preceding the fire, however, the insured had filed for

10

bankruptcy and in her bankruptcy petition she declared only $7,340.00 worth of personal property, $6,510.00 of which was attributed to her car. Id. The insured attempted to explain the disparity by pointing to different methods of calculating value. In affirming the judgment of the district court, the Eighth Circuit Court of Appeals held that the $92,247.19 difference between the value of the insured's stated personal property in bankruptcy and the amount in her insurance claim less than a year later was "too great to be reconciled," even if the insured used different methods of calculation. Id. at 423. According to the Eighth Circuit, "in the absence of contrary proof," it is correct to assume that a verified bankruptcy petition is "a true an accurate representation" of personal property. The Eighth Circuit noted that there was no evidence "that the figures [the insured] listed in her bankruptcy petition were inaccurate or that the insurance proof of loss amounts resulted from mistake or were otherwise inadvertent." Id. Therefore, "[t]he only reasonable inference on the evidentiary record is that [the insured] made a material misrepresentation in submitting her personal property claim" which voided her coverage. Id.

In the case at bar, plaintiffs estimated the fair market value of their personal property to be $262,000.00 for purposes of collecting insurance benefits, and yet for purposes of listing assets in bankruptcy, they represented that their personal property was valued at $7,000.00 – a 97% discount. The Court finds that the difference between the amount claimed on the Neidenbach's Proof of Loss for personal property and that amount they listed as assets in bankruptcy – a $255,000.00 difference – cannot be reconciled, even assuming plaintiffs used different methods of calculation. Plaintiffs here, like the insured in Liberty Mutual, have presented no evidence to suggest that there was a mistake in the bankruptcy filings, or that they accumulated a vast amount of additional property following their bankruptcy filing. They have not argued that the figures they listed in bankruptcy

11

were inaccurate or that the amount on the Proof of Loss was the result of a mistake. As the insured did in Liberty Mutual, they rest on the explanation that the difference is the result of their methods of calculation. The huge discrepancy between the values submitted to Amica and the couple's bankruptcy petition cannot be explained by a mere difference in the methods of calculation. The amount is far too great. Liberty Mutual, 486 F.3d at 423; see also Mathes v. Mid-Century Ins. Co., No. 4:06-CV-1161 SNL, 2008 WL 2439744, at *3 (E.D. Mo. Jun. 16, 2008) (finding $91,366.70 discrepancy between value of personal property listed in bankruptcy and that claimed for purposes of insurance too great to reconcile). Based on the record before it, the Court finds plaintiffs either omitted major ticket items from their bankruptcy schedule or they have misrepresented to Amica the amount and value of their personal property.[4] Plaintiffs do not assert that they intentionally or

---

[4]The Court reviewed the inventory that was attached to the Proof of Loss in the record. In addition to the enormous difference in the total value that they assigned to their personal property, plaintiff listed a number of items in the inventory that they had at the time they filed for bankruptcy and should have been included in the Schedule B they filed. In re Neidenbach, No. 11-46383 (Bankr. E.D. Mo. filed Jun. 28, 2011), ECF 14 at 4. For example, in bankruptcy, the Neidenbachs represented that they had no "[b]ooks, pictures, other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles." Id. Yet in the inventory, they listed $6,400.00 worth of collector cards; $5,100.00 worth of paintings and framed pictures; $3,142.00 in books; a $1,000.00 Beanie Baby collection; and $6,380.00 in DVDs, CDS, records and VHS tapes. Doc. 50, Ex. U at 8, 10-11, 13-14, 16-19, 21, 23-4, 29-30. In bankruptcy, the Neidenbachs listed $200.00 in clothing, but in their inventory they listed over $20,000.00 in apparel, including two cashmere and silk suits worth $2,000.00 and leather coats worth $3,390.00. Id. at 12, 18-20, 23. In bankruptcy, the Neidenbachs only described a $1,500.00 wedding ring when asked to claim "[f]urs and jewelry." In re Neidenbach, ECF 14 at 4. But in the inventory submitted to Amica, they claimed they had a "Med length women's fur coat Stix-Baer & Fuller" worth $1,500.00. Doc. 50, Ex. U at 20. They also listed a number of pieces of jewelry, including a pair of large diamond earrings, a pair of small diamond earrings, a black onyx dinner ring, and a gold anklet, for which they did not provide a value. Id. As for "[f]irearms and sports, photographic, and other hobby equipment," plaintiffs only listed two shotguns worth $200.00 in their bankruptcy petition. In re Neidenbach, ECF 14 at 4. In the inventory, the Neidenbachs claimed they had three shotguns worth $1,275.00 and two rifles worth $650.00. Doc. 50, Ex. U at 27. They did not list any sporting equipment in bankruptcy, but in the inventory they listed three bicycles worth $4,900.00, two treadmills worth $2,000.00 and other exercise equipment, including weights, worth $4,350.00, a tanning bed worth $3,000.00, and three

12

mistakenly omitted items from their bankruptcy petition, therefore, the Court must assume that the verified bankruptcy petition is "a true an accurate representation" of the Neidenbach's personal property. Liberty Mutual, 486 F.3d at 423. Applying Eighth Circuit law to this case, the Court finds that the "reasonable inference on the evidentiary record" must be that plaintiffs made "material misrepresentation[s]" in their Proof of Loss, and that the Policy is void. Id.

Plaintiffs cite to two cases in support of their position that there is an issue of material fact as to whether they intended to deceive Amica. The Court finds these cases are distinguishable from the case at hand. First, in Young v. Allstate Insurance Company, 685 F.3d 782 (8th Cir. 2012), the Eighth Circuit reversed the district court's granting of summary judgment to the insurance company on the ground that there was a triable issue as to whether the insureds intended to deceive the defendant. In the Young case, there was testimony that the insureds' daughter initially prepared the inventory list for the insurance company. Id. at 483. Later the insureds requested, during the claims process, that several items be removed from the inventory because mistakes were made, and they admitted that some of the values were overstated. Id. Here, there is no evidence that someone else

---

sets of golf clubs worth $2,900.00. Doc. 50, Ex. U at 4, 13, 18-20, 30, 32. They also listed $1,290.00 worth of camera and video recorders on the inventory. Id. at 5, 8, 10, 23, 30. In bankruptcy, for the category "[a]utomobiles, trucks, trailers, and other vehicles and accessories," plaintiffs listed three motor vehicles and a "Murry Riding Lawnmower worth $150.00. In re Neidenbach, ECF 14 at 4. In the inventory they listed a "Commercial Lawn Mower (Honda)" worth $1,500.00, a Craftsmen lawn mower worth $800.00, and a MTD mower worth $700.00. Doc. 50, Ex. U at 31. In bankruptcy, the Neidenbachs were asked to list "[h]ousehold goods and furnishings, including audio, video, and computer equipment." They listed "various household goods and furnishings" worth $5,000.00. In the inventory, the Neidenbachs listed over $49,055.00 in big-ticket furniture items, nine TVS worth $6,395.00, computers, computer equipment, and printers worth $7,760.00, $4,964.00 in video games and gaming equipment, and $113,594 worth of tools, including "3 lower tool boxes, 2 upper large tool boxes w/ complete tech tools" worth $35,000.00. Doc. 50, Ex. U at 3-36.

13

beside the Neidenbachs prepared the Proof of Loss, and there is nothing to suggest that they have ever tried to revise the amount they are claiming was lost.

Plaintiffs also cite to Merseal v. Farm Bureau Town & Country Insurance Company of Missouri, 396 S.W.3d 467 (Mo. Ct. App. 2013) in opposition to summary judgment. This case, from the Missouri Court of Appeals, is also distinguishable. In Merseal, the plaintiffs, like the Neidenbachs, claimed that the discrepancy between their bankruptcy petition and the amount claimed in insurance was the result of different methods of calculation. In Merseal, plaintiffs also provided evidence that their bankruptcy petition was prepared pro se, and that a computer program guided them through different categories of items to report in bankruptcy. The plaintiffs in that case testified that they did not include a number of personal items in bankruptcy "because these items would have no resale value in a garage sale." Id. 472. Furthermore, the plaintiffs in Merseal provided the insurance company with a detailed explanation of the difference between the values in bankruptcy and the amounts they claimed, and they also submitted a proposed amendment to their bankruptcy filing. Id. 473. The same cannot be said in this case. Although the Neidenbachs both attested to the fact that in bankruptcy they valued their personal property based on "garage sale values," they have not stated that they excluded certain items in their Schedule B because they had no value.[5] Furthermore, unlike the Merseal plaintiffs, there is no evidence in the record to suggest that plaintiffs intend or have attempted to amend their bankruptcy schedule.

Plaintiffs also argue that Amica is not entitled to summary judgment because their house was a total loss, and therefore, under Missouri law they are entitled to their policy limits, which is what

---

[5] From all appearances, it would seem the Neidenbachs excluded a number of big ticket items from their bankruptcy petition. And unlike the plaintiffs in Merseal, the Neidenbachs cannot claim that they omitted these items in bankruptcy because they would have no value in resale.

14

they were claiming in the Proof of Loss. Plaintiffs' argument is not supported in law, and it is inconsistent with the record, including their own affidavits.

First, in submitting their claim to Amica, plaintiffs did not merely claim the policy limits. There is evidence in the record that the Neidenbachs provided a detailed inventory of their personal property and, as they attest in their affidavits, they calculated the value of their personal property for purposes of insurance based on what they believed was the fair market value of these items. They do not state in their affidavits that in making their insurance claim and submitting the Proof of Loss, they valued their personal property based on the policy limits.

Second, the misrepresentations were material. Plaintiffs appear to be arguing that even if they had made misrepresentations as to the nature and value of their personal property, which they deny they did, any such misrepresentations would have been immaterial because their house was a total loss and, therefore, they are entitled to the policy limits. In other words, plaintiffs argue that it does not matter what they claimed for lost personal property because they should receive the policy limits. The Court does not agree with plaintiffs' analysis. Plaintiffs' misrepresentations as to the value of their personal property were material misrepresentations because Amica disputes that there was a total loss due to the fire. The company contends that portions of the dwelling were still standing, and that some of the personal property was salvageable. Therefore, an accurate list of Proof of Loss was material to the administration of the Neidenbach's claim. Because Amica disputed that there was a total loss due to the fire, the amount and value of personal property would be have been at issue had this case gone to trial. Plaintiffs' assertion that the values claimed in the bankruptcy are irrelevant is simply not true.

Finally, even if the house were a total loss, plaintiffs would not automatically be entitled to the policy limits for their personal property as they claim. Under Missouri law when there is a total loss by fire, the insured are not entitled to the policy limits for personal property. The measure of damages for total loss of personal property is the amount for which the property was insured, minus depreciation. West v. Shelter Mutual Ins. Co., 864 S.W.2d 458, 461 (Mo. Ct. App. 1993). Furthermore, "the burden of proof as to the loss of personal property is on the insured." Id. "In order to recover the full amount of coverage on the personal property, the insured [ ] has the burden of proving lack of depreciation from the date of the policy. This burden can be satisfied by proof of value at the time of the loss or the extent of depreciation in value from the date of the insurance policy to the time of the loss." Id. (citing Riccardi v. United States Fidelity & Guaranty Co., 434 S.W.2d 737, 741 (Mo. Ct. App. 1968). Plaintiffs argue that because their house was a total loss, they are simply entitled to the policy limits for their personal property and, therefore, evidence of the value of there personal property would be irrelevant. This argument is based on a false premise. Under Missouri law plaintiffs carry the burden to prove the value of their personal property at the time of the fire, even when there is a total loss. Id. Evidence regarding the value of the Neidenbachs' personal property would have been relevant, even if their home was a total loss.

In sum, the Court finds there is a huge discrepancy between the amount plaintiffs claimed for lost personal property in their Proof of Loss and what they listed in their bankruptcy petition, which cannot be explained as simply a difference in methods of calculation. Furthermore, plaintiffs' contention that they merely claimed the policy limits is not supported by the record. Finding there is no other reasonable explanation for the great discrepancy between the Proof of Loss and the bankruptcy petition, the Court finds Amica is entitled to judgment as a matter of law because

16

plaintiffs knowingly or willing concealed or misrepresented to Amica the nature and value of their personal property, which amounted to material misrepresentations that voided the Policy. Liberty Mutual, 486 F.3d at 423.

### B. Other Misrepresentations

Defendant also argues plaintiffs made material misrepresentations regarding the existence of two storage units. Amica argues plaintiffs are not entitled to recover under the terms of the Policy because they removed personal items from their dwelling following the fire, and they concealed this fact from Amica. Amica further argues that plaintiffs informed the company that their financial documents were destroyed in the fire, and yet Amica's adjuster found financial documents in the two concealed storage units. Amica has also presented compelling evidence that the Neidenbachs have not been truthful about the demolition of their home following the fire and the removal of their fiberglass underground pool. Finding there is no coverage because the Neidenbachs misrepresented the value of their personal property, the Court declines to address these issues. The Court also declines to address Amica's arguments that the Neidenbachs were uncooperative during the claims process and they prematurely filed suit before Amica had made a coverage determination.

### V. *Amica's Counterclaim*

In responding to plaintiffs' complaint, Amica filed a counterclaim against the Neidenbachs for declaratory judgment. The company in its counterclaim alleges, among other things, that the Neidenbachs are barred from recovery and there is no coverage under the Policy because they intentionally concealed and misrepresented material facts, including the extent of their claimed loss. Amica asks the Court to:

> (1) determine the rights and obligations of the parties under the Policy and enter a judgment construing the Policy, including the applicable coverage provisions,

> exclusions, and conditions thereunder, in favor of Amica; (2) declare that Amica is entitled to recover the total amount of said advance payments and additional living expenses, the amount of any payment to a mortgage holder, and the amount of expenses incurred in investigation, adjustment, and evaluation of the claim, including reasonable attorney's fees; and (3) for any and all further relief that the Court deems just and proper, under the circumstances. Doc. 19 at 22.

In its summary judgment motion, Amica moves for judgment as to the claims plaintiffs brought against it. The company does not mention its counterclaim. The Court therefore does not construe Amica's motion for summary judgment as seeking judgment on its declaratory judgment counterclaim. That said, the Court has determined that the Policy is void, and plaintiffs are not entitled to recovery. In light of the fact that the Court has determined that there is no coverage under the Policy, the Court will vacate the trial date in this case, and order the parties to brief the issue as to what relief Amica is entitled under its counterclaim. Amica asked that the Court declare it is entitled to recover the amount of advance payments and living expenses, payments to a mortgage holder, and expenses it incurred in its investigation, adjustment, and evaluation of Neidenbachs' claim, in additional to reasonable attorney's fees. Amica must provide legal authority and evidence in support of the relief it requests, perhaps in the form of a properly supported motion for summary judgment. Alternatively, Amica may indicate that it is dismissing its counterclaim.

## VI. *Conclusion*

For the foregoing reasons, the Court finds there are no genuine issues of material fact and Amica is entitled to summary judgment as a matter of law as to plaintiffs' claims against it. The undisputed facts establish that plaintiffs knowingly or willingly concealed a material fact relating to the Policy at issue in this case. The only reasonable inference based on the evidence before the Court is that plaintiffs made material misrepresentations in submitting their personal property claim. The Court finds is no coverage under the Policy.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Amica Mutual Insurance Company's motion for summary judgment is **GRANTED.** [Doc. 48]

**IT IS FURTHER ORDERED** that Dale and Kim Neidenbach's motions for a <u>Daubert</u> hearing and to exclude expert opinions are **DENIED as moot.** [Doc. 35]

**IT IS FURTHER ORDERED** that the April 13, 2015 trial date is **VACATED.**

**IT IS FURTHER ORDERED** that on or before **March 31, 2015**, and in accordance with this Memorandum and Order, Amica Mutual Insurance Company shall either (1) file a summary judgment motion or other appropriate dispositive motion on its counterclaim, or (2) file a motion to voluntarily dismiss its counterclaim. Plaintiffs Dale and Kim Neidenbach shall file their memorandum in opposition to any such motion in accordance with the time limits of this Court's Local Rules. Any reply shall also be filed in accordance with the Local Rules. Failure to comply with the terms of this Memorandum and Order shall result in the dismissal of Amica Mutual Insurance Company's counterclaim.

An appropriate partial judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   10th   day of March, 2015.