# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| DALE NEIDENBACH, et al., | ) |
| Plaintiffs/Counter-Defendants, | ) |
| v. | ) No. 4:13-CV-1604 CAS |
| AMICA MUTUAL INSURANCE COMPANY, | ) |
| Defendant/Counter-Claimant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's second motion for summary judgment. In a Memorandum and Order dated March 10, 2015, the Court granted defendant Amica Mutual Insurance Company ("Amica") summary judgment as to plaintiffs' claims against it. Amica now moves that the Court enter summary judgment in its favor with regard to its counterclaim. The Neidenbachs oppose the motion, which is fully briefed and ready for disposition. For the following reasons, Amica's motion for summary judgment is granted in part and denied in part.

### *I. Procedural Background*

Dale and Kim Neidenbach allege in their first amended complaint that on or about October 10, 2012, a fire started on their property, and they sustained damage amounting to the total loss of their home and personal belongings. They claim that Amica had issued them an insurance policy covering this damage, which was in full force and effect at the time. They also claim that they satisfied all conditions precedent under the policy.

Amica filed an answer in response to the amended complaint, in which it asserted a number of affirmative defenses and a counterclaim against plaintiffs. In its counterclaim, Amica requests, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the Court

declare the Neidenbachs are barred from recovery and there is no coverage under the policy at issue. It alleges that the Neidenbachs intentionally destroyed their property, committed fraud and breached the policy. As a result of their conduct, Amica also alleges in its Counterclaim that it is entitled to recover from the Neidenbachs all amounts the company paid by reason of the insurance claim, including advance payments to the Neidenbachs, payments to a mortgagee, amounts paid in the adjustment and investigation of the claim, and attorney's fees. Amica asks the Court to:

> (1) determine the rights and obligations of the parties under the Policy and enter a judgment construing the Policy, including the applicable coverage provisions, exclusions, and conditions thereunder, in favor of Amica; (2) declare that Amica is entitled to recover the total amount of said advance payments and additional living expenses, the amount of any payment to a mortgage holder, and the amount of expenses incurred in investigation, adjustment, and evaluation of the claim, including reasonable attorney's fees; and (3) for any and all further relief that the Court deems just and proper, under the circumstances. Doc. 19 at 22.

In late 2014, Amica moved that the Court enter summary judgment in its favor as to plaintiffs' claims against the company, a motion that the Neidenbachs opposed. Amica argued in its motion for summary judgment that the Neidenbachs were barred from recovering under the policy due to a number of material misrepresentations they made during the claims process. More specifically, Amica argued that the amount plaintiffs claimed in their proof of loss differed dramatically from the amount they valued their personal property in connection with a bankruptcy petition they filed just one year prior to the fire. Amica also argued that the Neidenbachs failed to inform Amica about the existence of financial documents and other property items that they had moved to two storage units following the fire. Amica further argued that the Neidenbachs concealed their involvement in the demolition of their home and the removal of their underground swimming pool before Amica had completed its investigation. Finally, the company argued that the

Neidenbachs failed to cooperate in Amica's investigation and filed suit prematurely, before Amica had made any coverage decision.

In a Memorandum and Order dated March 10, 2015, the Court granted Amica's motion for summary judgment. The Court found the undisputed facts established that plaintiffs knowingly or willingly concealed material facts relating to the insurance policy at issue in this case. More specifically, the Court found:

> there is a huge discrepancy between the amount plaintiffs claimed for lost personal property in their Proof of Loss and what they listed in their bankruptcy petition, which cannot be explained as simply a difference in methods of calculation. Furthermore, plaintiffs' contention that they merely claimed the policy limits is not supported by the record. Finding there is no other reasonable explanation for the great discrepancy between the Proof of Loss and the bankruptcy petition, the Court finds Amica is entitled to judgment as a matter of law because plaintiffs knowingly or willing concealed or misrepresented to Amica the nature and value of their personal property, which amounted to material misrepresentations that voided the Policy.

Doc. 58 at 16-7. Consequently, under the terms of the policy at issue, the Court found that there was no coverage. Having determined that there was no coverage under the policy at issue because the Neidenbachs misrepresented the value of their personal property, the Court declined to address Amica's alternative arguments for voiding the policy.

In the Memorandum and Order, the Court noted that there was a pending counterclaim, but that the summary judgment motion did not raise issues related to the counterclaim. For example, there was no evidence before the Court as to how much Amica had paid to the Neidenbachs under the policy. However, "[i]n light of the fact that the Court has determined that there is no coverage under the Policy, the Court will vacate the trial date in this case, and order the parties to brief the issue as to what relief Amica is entitled under its counterclaim." Doc. 58 at 17. This is what is at issue presently before the Court.

In its Second Motion for Summary Judgment, Amica asks the Court to declare that it is entitled to recover the amount of advance payments and living expenses it made to and on behalf of the Neidenbachs, and the expenses it incurred in its investigation, adjustment, and evaluation of the Neidenbachs' claim. Amica also requests that the Court award it attorneys' fees and litigation expenses. Amica further requests that the Court hold that it should indemnified from any claim by a mortgagee of the property.

## *II. Summary Judgment Standard*

The Eighth Circuit has articulated the appropriate standard for consideration of motions for summary judgment, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial."

4

Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008) (cited case omitted).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving Amica's Second Motion for Summary Judgment.

### *III. Facts*

Dale and Kim Neidenbach were named insureds on a homeowners insurance policy issued by Amica, Policy number 630524-20HX ("the Policy"), dated May 8, 2012 through May 8, 2013. On October 10, 2012, a fire occurred at the Neidenbachs' residence, located at 991 Decker Road, Labadie, Missouri 63055. The Neidenbachs claimed the October 2012 fire caused damage to their dwelling and their personal property. The Neidenbachs submitted an insurance claim to Amica seeking $375,000 in alleged damage to the dwelling and garage and submitted an inventory alleging $262,500 in damage to personal property items.

Amica responded to the report loss and advanced sums to and on behalf of the Neidenbachs. Following the fire, Amica advanced to the Neidenbachs a Pre-paid Visa Card containing $10,000.00, and a check for $5,000.00 (Amica Check No. 4270558), both for emergency expenses. Amica retained The Wrecking Crew to obtain a competitive bid for debris removal on behalf of the Neidenbachs, paying $150.00. Amica sent the Neidenbachs and their mortgagee a check for $6,350.00 (Amica Check No. 4441094) for debris removal. Dale Neidenbach attests in an affidavit that he did not deposit or cash this check. It is undisputed that this check has not been cashed. Amica advanced $1,072.93 to Paragon Restoration (Amica Check No. 4309609) for the initial board-up of the fire-damaged dwelling. Following the fire, Amica advanced hotel expenses along with temporary living expenses for eleven months, through Homelink, for a total of $42,486.92

5

(Amica Check Nos. 4292526; 4306245; 4365504; 4401131; 4478103; 4490444; 4529908; 4593128; 4636456; and 4650043) to secure fully furnished temporary living space for the benefit of the Neidenbachs.

Amica also expended money and resources in the investigation, adjustment, and evaluation of the Neidenbachs' claim. Amica retained Mr. Lauer of Pyr-Tech, Inc., to assist in its investigation of the fire. Amica paid Pyr-Tech $3,818.92 for these initial investigative services (Amica Check No. 4491061). Amica also retained Ray Papish of Ray Papish Investigations LLC to investigate the circumstances surrounding the fire, the demolition of the dwelling, the missing pool, and to photograph and inventory the personal property items later discovered in the storage units. Amica paid Ray Papish Investigations LLC a total of $12,003.46 (Amica Check Nos. 4473602; 4550737; 4595694; 4662366; 4725505; and 5236343). Amica retained Nixon & Co. to adjust the loss. Amica paid Nixon & Co. $8,196.20 by way of electronic transfers.

On April 10, 2013, plaintiffs filed suit seeking to recover the policy proceeds. Amica hired experts to defend in the suit. Amica retained Robert Miller of SEA, LTD, to investigate the cause and origin of the fire. Mr. Miller was hired to prepare an expert report to assist in Amica's defense. Amica paid Mr. Miller a total of $7,318.75 (Amica Check Nos. 4333695; 4567671; 4724866; 4724866; and 5007271). Amica retained Peter Layson of Applications Engineering Group, Inc. to assist with the investigation by performing scientific testing to determine whether a fire could be ignited in the manner described by Dale Neidenbach and to prepare an expert report to assist in Amica's defense. Amica paid Mr. Layson a total of $3,886.27 (Amica Check No. 4847633). Amica also retained Joseph Toscano of Jack Ward Fire Consultants to assist in the investigation by determining whether the fire was intentionally set and to prepare an expert report to assist in

6

Amica's defense. Amica paid Jack Ward Fire Consultants a total of $6,731.25 (Amica Check Nos. 4567276 and 4980879).

Amica incurred other litigation expenses defending the suit. Amica retained Midwest Litigation Services/National Depo to transcribe the Examinations Under Oath of the Neidenbachs, their adult son, J.D. McKeehan, and, after litigation was underway, to transcribe the deposition of Mr. Pontello, the Neidenbachs' former Bankruptcy attorney, paying a total of $3,412.90 (Amica Check Nos. 4504745; 4563220; 4588525; and 5171976). Amica paid Diane C. Huth, Court Reporter, $121.50 for her services in transcribing the Deposition of Don Nguyen, Amica's designated representative (Amica Check No. 4932763). Amica paid Aequitas, LLC $541.25 for mediation services related to this litigation (Amica Check No. 5118032). Amica retained Dahlberg & Associates, LLC to serve a subpoena duces tecum upon Mr. Pontello. Amica paid Dahlberg & Associates, LLC $60.00.

As for attorneys' fees, Amica retained Cockerham & Associates, LLC. Amica states that the firm was retained during the company's investigation of the Neidenbachs' claim. After learning the suit had been filed, Amica retained the firm to defend Amica in the litigation. According to Amica, it has paid a total of $147,159 in legal fees and expenses over the course of this claim and litigation.

Amica further maintains that in addition to the funds it already expended, Amica will be required to address the claim of the Neidenbachs' mortgagee. The mortgagee, who is not identified by Amica, is not a party to this suit. There is no evidence in the record that Amica has paid the mortgagee any amount under the Policy, or that the mortgagee has made a claim.

7

*IV. Discussion*

This is a diversity case and both parties agree that Missouri law applies. The Eighth Circuit has held that under Missouri law, the interpretation of an insurance contract is "generally a question of law, particularly in reference to the question of coverage." Spirtas Co. v. Nautilus Ins. Co.,715 F.3d 667, 671 (8th Cir. 2013) (quoting D.R. Sherry Constr., Ltd. v. American Family Mut. Ins. Co., 316 S.W.3d 899, 902 (Mo. banc 2010)). As noted by the Eighth Circuit, "Missouri courts interpret terms in an insurance contract according to their plain meaning." Id. (citing Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo. banc 1999)). "The plain or ordinary meaning is the meaning that the average layperson would understand." Shahan, 988 S.W.2d at 535. What is more, ambiguities are resolved in favor of the insured. Burns v. Smith, 303 S.W.3d 505, 509-10 (Mo. banc 2010). Some insurance policies, like the Policy at issue in this case, contain language that provides the entire policy will be void if an insured committed fraud or knowingly concealed or misrepresented any material fact or circumstances related to the insurance. Such misrepresentation clauses have been deemed valid and enforceable in Missouri. Liberty Mut. Fire Ins. Co. v. Scott, 486 F.3d 418, 422–23 (8th Cir. 2007); see also, Childers v. State Farm Fire & Cas. Co., 799 S.W.2d 138, 141 (Mo. Ct. App. 1990).

Amica argued in its first motion for summary judgment that the Neidenbachs made gross misrepresentations following the fire when they submitted their Proof of Loss. In their Proof of Loss, which was notarized and signed under oath, the Neidenbachs sought reimbursement for $262,500.00 in personal property content items and $375,000.00 in alleged damage to the dwelling and garage. It was also undisputed that when the Neidenbachs filed for bankruptcy about a year earlier, they swore under oath that their home had a value of $300,000.00, and that they owned only $7,0000.00 worth of household goods, furs, jewelry, firearms and other such personal property. In

8

its March 10, 2015 Memorandum and Order, the Court found there was no reasonable explanation for the great discrepancy, and that Amica was entitled to judgment as a matter of law because the Neidenbachs knowingly or willing concealed or misrepresented to Amica the nature and value of their personal property, which amounted to material misrepresentations that voided the Policy. Liberty Mutual, 486 F.3d at 423.

### A. Amounts Paid Under the Policy

The Court agrees with Amica that under Missouri law, it is entitled to recover all amounts previously paid under the Policy. See General Cas. Ins. Cos. v. Holst Radiator Co., 88 F.3d 670, 670-71 (8th Cir. 1996) (observing that under Missouri law the insurer may recover amounts paid to the insured that were paid before the insurer learned the Fraud and Concealment provision had been violated). The parties do not dispute that Amica paid to and on behalf of the Neidenbachs $58,709.85, and the Court finds Amica is entitled to reimbursement for that amount. The parties do dispute that Amica paid $6,350.00 under the Policy for debris removal. It is undisputed that Amica cut a check, No. 4441094 dated February 25, 2013, for $6,350.00, and it is undisputed that the check was never cashed. The Neidenbachs argue that Amica is overreaching in requesting reimbursement for this amount, and they have gone so far as to allege fraud on the Court. Amica responds that the request was entirely proper because the check remains "live," and "the Neidenbachs and their mortgagee could access the funds today if they presented the fully endorsed check for payment." Doc. 71 at 2. Without citing any authority, Amica argues "there is nothing untoward about Amica's request for reimbursement for payment of an expense which remains properly debited in Amica's accounting concerning this file." Id.

9

The Court declines to award Amica $6,350.00 in damages for reimbursement of the debris removal. Amica did issue the check, but because the check was never presented for payment Amica has not incurred damages in the amount of $6,350.00. The Neidenbachs should not have to reimburse Amica for that amount. The Court acknowledges Amica has concerns that the check could be cashed in the future. The Court will, therefore, order the Neidenbachs to return the uncashed check to Amica, or file a written certification that the check has been destroyed.[1]

Amica is entitled to recover from the Neidenbachs $58,709.85. This is the undisputed amount Amica paid to or on behalf of the Neidenbachs before it learned the fraud and concealment provision in the Policy has been violated. General Cas. Ins., 88 F.3d at 671.

**B.   Attorneys' Fees and Other Expenses**

In its second motion for summary judgment, Amica is also seeking an award of attorneys' fees and expenses.[2] Under the American Rule, "parties are required to pay their own attorney's fees unless an award of fees is authorized by statute." Kelly v. Golden, 352 F.3d 344, 352 (8th Cir. 2003). Amica argues it is entitled to attorneys' fees and expenses under the Federal Declaratory Judgment Act, 28 U.S.C. § 2202. There is no provision for the award of attorney's fees and expenses under the Federal Declaratory Judgment Act. That said, the Eight Circuit has noted that "attorneys' fees may be awarded under 28 U.S.C. § 2202 where such an award is authorized by applicable state law

---

[1] The Court might also suggest that Amica stop payment on the check, which most banks will do for a nominal fee.

[2] Amica requests that it be awarded its expenses, as well as attorneys' fees, but it has merged together the analysis for an award of fees versus expenses. The cases to which it cites refer to awarding attorneys' fees in declaratory judgment actions. The company offers no separate authority for the notion that it is entitled to expenses. The parties should note, however, that nothing in this Memorandum and Order should be construed to mean that Amica is precluded from filing a Bill of Costs as the prevailing party to this suit.

for comparable actions." American Family Ins. Co. v. Dewald, 597 F.2d 1148, 1151 (8th Cir. 1979).

Under Missouri law, a court may award attorneys' fees as costs in a declaratory judgment proceeding where "special circumstances" exist. David Ranken, Jr. Tech. Inst. v. Boykins, 816 S.W.2d 189, 193 (Mo. 1991) (en banc), overruled in part on other grounds by Alumax Foils, Inc. v. City of St. Louis, 939 S.W.2d 907 (Mo. 1997) (en banc). The special circumstances "exception is narrow, strictly applied, and does not apply every time two litigants maintain inconsistent positions." Goellner v. Goellner Printing, 226 S.W.3d 176, 179 (Mo. Ct. App. 2007). The Eighth Circuit has identified three exceptions where "special circumstances" exist under Missouri law and fees may be awarded:

> These exceptions include situations (1) "where the natural and proximate result of a breach of duty is to involve the wronged party in collateral litigation," [David Ranken, Jr. Tech. Inst., 816 S.W.2d at 193]; that is, litigation resulting from the breach that is distinct from the suit to prove the breach itself, Missouri Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus., 971 S.W.2d 302, 306 (Mo. 1998) (en banc); (2) where the court finds a need to "balance benefits" of litigation, 66, Inc. v. Crestwood Commons Redev. Corp., 130 S.W.3d 573, 594 (Mo. Ct. App .2003), which applies when the benefits of the litigation inure to a discrete group of nonparty beneficiaries or the public at large and "the nature of the lawsuit" is such that it is of an "unusual type[ ]" or "extremely complicated litigation is involved," Gurley v. Montgomery First Nat'l Bank, N.A., 160 S.W.3d 863, 871 (Mo. Ct. App. 2005) (quotation omitted); and perhaps (3) when the declaratory-judgment plaintiff's claim is clearly baseless under published case law. [American Economy Ins. Co. v. Ledbetter, 903 S.W.2d 272, 276–77 (Mo. Ct. App. 1995)] ("Given the rights of the parties, the amount of financial interest involved in the case, and [the] lack of standing for [the insurer] to bring this action as evidenced by published case authority, we cannot conclude that the trial court abused its discretion [in awarding fees].").

American Home Assurance Co. v. Pope, 487 F.3d 590, 606 (8th Cir. 2007). The Eighth Circuit further notes that "Missouri courts also recognize an exception to the American Rule where one party engages in 'intentional misconduct' during the course of litigation." Id. (emphasis added)

(citing Volk Const. Co. v. Wilmescherr Drusch Roofing Co., 58 S.W.3d 897, 901 (Mo. Ct. App. 2001)).[3]

Citing a number of cases, Amica contends that intentional misconduct or fraud by a party is a "special circumstance" justifying an award of attorney's fees under Missouri law. Doc. 66 at 6. In support of its assertion, Amica cites to three Missouri court of appeals decisions, DCW Enterprises, Inc. v. Terre du Lac Ass'n, Inc., 953 S.W.2d 127, 132 (Mo. Ct. App. 1997), Washington University v. Royal Crown Bottling Co., 801 S.W.2d 458 (Mo. Ct. App. 1990), and Temple Stephens Co. v. Westenhaver, 776 S.W.2d 438, 442 (Mo. Ct. App. 1989). These decisions, however, are contrary to Missouri Supreme Court law, which has not recognized fraud or misconduct in a declaratory judgment action as a "special circumstance" that would justify an award of fees. Pope, 487 F.3d at 606; David Ranken, Jr. Tech. Inst., 816 S.W.2d at 193 (noting that "fees have been denied in cases of an improper tax assessment, when a defendant tendered a check on insufficient funds with an intent to defraud, when defendants tortiously conspired and threatened to wrongfully foreclose on notes and deeds of trust, and when defendants fraudulently concealed the existence of an outstanding deed of trust on a house."). Amica also cites to Miller v. Higgins, 452 S.W.2d 121, 125 (Mo. 1970) and In re Usery, 123 F.3d 1089, 1096 (8th Cir.1997) in support of its motion for fees. These two cases, however, did not involve actions under Federal Declaratory Judgment Act or Missouri's equivalent statute. They were cases involving common law fraud claims. The two cases, therefore, are not relevant to the issue of fees in a declaratory judgment

---

[3] With regard to intentional misconduct during the course of litigation, the Eighth Circuit notes that a district court need not look to Missouri state law because a district court "would be able to assess fees based upon its inherent power as a federal court." Pope, 487 F.3d at 606 n.7 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 52–55 (1991)).

action. To the extent Amica would argue this is a fraud case the Court notes Amica did not plead common law fraud. Furthermore, a claim that a policy is void for intentional concealment or misrepresentation is not the equivalent of claim of common law fraud. Kearns v. Interlex Ins. Co., 231 S.W.3d 325, 331 (Mo. Ct. App. 2007); Hayes v. United Fire & Cas. Co., 3 S.W.3d 853, 857 (Mo. Ct. App. 1999); see also, General Cas. Ins., 88 F.3d at 670-71.

A number of cases in the Eastern District of Missouri have addressed whether to award attorneys' fees to a prevailing defendant insurance company in a declaratory judgment action where there was proof of misrepresentations on the part of the insured. There is a split within this district on the issue of fees. Some judges have awarded fees, finding misrepresentations to an insurance company that voids a policy is a "special circumstance" warranting an award of fees under Missouri law. See Wiles v. Capital Indem. Corp., 204 F. Supp.2d 1207, 1209 (E.D. Mo. 2002); Allstate Ins. Co. v. Estes, 118 F. Supp.2d 968, 974 (E.D. Mo. 2000); Employers Mut. Cas. Co. v. Tavernaro, 21 F. Supp.2d 1039, 1040 (E.D. Mo. 1998). These three cases, however, rely on each other and Miller v. Higgins, 452 S.W.2d 121, 125 (Mo. 1970), which a discussed above is a Missouri common law fraud and breach of contract case, not a declaratory judgment action. Furthermore, the Eighth Circuit in Pope, 487 F.3d 590, only recognized "intentional misconduct during the course of litigation" as a special circumstance that may warrant fees. Id. at 606 (emphasis added). The Eighth Circuit did not list fraud or misrepresentation in general as being recognized exceptions under Missouri's law for an award of fees in a declaratory judgment action. Id.

Some cases in this district have recognized that a finding of intentional misrepresentation to an insurance company may justify an award of fees in a declaratory judgment action, but that the circumstances of their cases did not warrant an award of fees. Beckon, Inc. v. AMCO Ins. Co., 2010

13

WL 985214, *4 (E.D. Mo. Mar. 15, 2010); Cedar Hill Hardware & Constr. Supp., Inc. v. Insurance Corp. of Hannover, 2006 WL 2862145, at *5 (E.D. Mo. Oct. 4, 2006); Travelers Indem. Co. of Am. v. Willig, 2000 WL 288396, at * 2 (E.D. Mo. Mar. 10, 2000). One case in this district found that Missouri's exceptions allowing for an award of fees in a declaratory judgment action do not apply to a case where the plaintiff concealed material facts and made misrepresentations and false statements to her insurance company. Wells v. Farmers Alliance Mut. Ins. Co., 2009 WL 2836502, at *12 (Aug. 28, 2009).

This Court agrees with the reasoning in Wells. Under Missouri law, exceptions to the America Rule regarding attorney fees in declaratory judgment actions are narrow and strictly applied. David Ranken, Jr. Tech. Inst., 816 S.W.2d at 193. As the Eighth Circuit has noted, Missouri's highest court has recognized three limited exceptions that allow for an award of fees in a declaratory action case, none of which apply here. Pope, 487 F.3d at 605. To the extent Amica is relying on a case from the Missouri Court of Appeals or Eastern District of Missouri that allows for fees in a declaratory judgment action based on insurance fraud, this case would "conflict" with the Supreme Court of Missouri's "clear statements of law" regarding the "recognized exception[s]" to the American Rule in declaratory judgment actions. Id. When such a conflict arises in a diversity case, "the substantive law of a state 'declared by its Legislature in a statute or by its highest court in a decision' controls." Id. (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

Even if the Court were to find that it had to the authority to award attorneys' fees and expenses "based on [its] equity power," the Court would decline to do so. Willig, 2000 WL 288396, at *2. In the case at bar, the Neidenbachs suffered significant damage as a result of a fire. They made a claim for personal property as well as real property. In its Memorandum and Order dated

March 10, 2015, the Court found the undisputed evidence established that the Neidenbachs overreached and made significant misrepresentations in their claims for personal property. Following controlling Missouri law, the Court voided the policy in question, which resulted in the Neidenbachs losing coverage on not only their personal property, but also on their real property, which was worth over three hundred thousand dollars – money Amica did not have to pay out. Although Amica hired a number of experts to investigate the cause of the fire, this issue was never before the Court, and there has been no finding in this case that the fire was intentionally set or caused by arson. In sum, even if the Court had the authority to award fees and expenses under its equity power, it would decline to do so. The Court find there are no special circumstances that would warrant an award of fees or expenses in this case. Id.

### C. Future Indemnity

Amica also argues in its second motion for summary judgment that as a result of the misrepresentations and voided Policy, the company should not be required to make payments to the mortgagee. Citing two cases from this district court, Amica asks the Court order that it be indemnified for any claim brought by a mortgagee of the property. Employers Mut. Cas. Co. v. Tavernaro, 21 F.Supp.2d 1039 (E.D. Mo. 1998); Cedar Hill, 2006 WL 2862145. The two cases Amica cites, however, involved the recovery of payments that were already made to the mortgagee. They did not involve an order for prospective relief. In the case at bar, there is no evidence that Amica made payments to the mortgagee, therefore, the Court does not find these cases to be persuasive on the issue of prospective relief.[4]

---

[4] The check for debris removal was made out to the Neidenbachs and their mortgagee, but as previously stated the check was never cashed.

Amica cites no case law or controlling authority for its contention that the Court should declare that Amica is entitled to be indemnified for any payments it makes to a mortgagee under the Policy. In its motion and memoranda, Amica does not identify the mortgagee, the mortgagee is not a party to this suit, and there is no evidence the mortagee has even made a claim against Amica under the Policy. Not only has Amica not provided the Court will sufficient authority in support of the relief it requests, in the Court's view, there does not appear to be a justiciable dispute. Marine Equipment Management Co. v. United States, 4 F.3d 643, 647 (8th Cir. 1993) (declining to find controversy sufficient to support jurisdiction in declaratory judgment action based on plaintiff's allegations that it may be subject to future claims); Caldwell v. Gurley Refining Co., 755 F.2d 645 (8th Cir.1985) (the test to determine whether there is an actual controversy within the meaning of the Declaratory Judgment Act is whether "there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941)). In sum, the Court finds Amica has not met its burden, and Court declines to order that Amica be indemnified by the Neidenbachs as to any future claims made by the mortgagee.

## *V. Conclusion*

Having previously found that the Neidenbachs knowingly or willing concealed or misrepresented to Amica the nature and value of their personal property, which amounted to material misrepresentations that voided the Policy, the Court now finds Amica is entitled to recover all amounts previously paid under the Policy. Amica is entitled to recover from the Neidenbachs $58,709.85, the undisputed amount Amica paid out under the Policy. The Court will order the Neidenbachs to return to Amica the uncashed check in the amount of $6,350.00, or to file a written

certification that the check has been destroyed. As for attorneys' fees and expenses, the Court finds that Amica is not entitled to its attorneys' fees and expenses under the Federal Declaratory Judgment Act or Missouri's comparable statute. Finally, Amica has not established to the Court's satisfaction that is entitled to an order declaring that it be indemnified for claims on the Policy that may be made by the mortgagee.

Accordingly,

**IT IS HEREBY ORDERED** that Amica Mutual Insurance Company's motion for summary judgment is **GRANTED in part**, and **DENIED in part**. Consistent with the terms of this Memorandum and Order, the motion for summary judgment is **GRANTED** to the extent that Amica Mutual Insurance Company is entitled to recover the advance payments it made to or on behalf of Dale and Kim Neidenbach, which total Fifty Eight Thousand, Seven Hundred Nine Dollars and Eighty-Five Cents ($58,709.85). In all other respects, the motion is **DENIED.** [Doc. 64]

**IT IS FURTHER ORDERED** that two (2) weeks from the date of this Memorandum and Order, Dale or Kim Neidenbach shall file a written declaration or affidavit with the Court stating that they have returned to Amica Mutual Insurance Company Check No. 4441094, in the amount of $6,350.00, or that Check No. 4441094 has been destroyed.

An appropriate partial judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __9th__ day of February, 2016.